IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JACK AMES, et al., | * | |
| Plaintiffs, | * | |
| | | Civil No. RDB 09-1929 |
| v. | * | |
| HARFORD COUNTY, et al., | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiffs have brought this action asserting numerous constitutional and common law claims against Harford County (the "County"), the Town of Bel Air, the Superintendent of the Maryland State Police, the Sheriff of Harford County, seven Maryland State Police troopers, three Bel Air Police officers, and an employee of Harford County. Plaintiffs' claims relate to their arrest, search, and detainment that occurred after their involvement in an anti-abortion protest in Harford County, Maryland on August 1, 2008. Plaintiffs challenge the constitutionality of Defendants' conduct and policies and they seek declaratory and injunctive relief as well as damages. This Memorandum Opinion addresses two motions to dismiss, or, in the alternative, for summary judgment—one filed by the Town of Bel Air and the Bel Air police officers (Paper No. 36) and another filed by the Superintendent of the Maryland State Police and the State Police troopers (Paper No. 46). The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, both motions are DENIED.

## BACKGROUND

In ruling on a motion to dismiss, "[t]he factual allegations in the Plaintiff[s'] complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff[s]." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiffs Jack Ames, Laura Beeson, Nathan Cain, Patrick Mooney, Albert Stecklein, Timothy Sullivan, and Jessica Ward were participants in a week-long anti-abortion demonstration event sponsored and conducted by Plaintiff Defendant Life, a non-profit organization based in Maryland. Am. Compl. ¶ 36. On August 1, 2008, at approximately 4:00 p.m., Plaintiffs were protesting on a grassy shoulder along Route 24 and at the nearby intersection of Routes 24 and 294 in Harford County, Maryland. *Id.* ¶ 38.

After receiving complaints from motorists, Defendant State Troopers Christopher Bradley, Charles Neighoff, and Walter Rasinski arrived at the scene and demanded that Plaintiffs end their protest. *Id.* ¶¶ 39-40. The Trooper Defendants stated that the demonstrators needed a permit to protest under a county ordinance that governs the placement of signs on public property. *Id.* ¶¶ 41-46.

Under fear of arrest, Plaintiffs relocated their protest approximately four miles away to the intersection of Route 24 and McPhail Road within the Bel Air town limits. *Id.* ¶ 47. At this location, the demonstrators displayed pro-life signs on a grassy shoulder adjacent to Route 24, about ten to twelve feet from the roadway. *Id.* ¶ 48. At approximately 5:30 p.m., Bradley, Neighoff, and Rasinski returned with fellow State Troopers Ernest Meades, Charles Mohr, and Mitchell Nuzzo, and with Bel Air police officers Armand Dupre, Donald Ravadge, and Mark Zulauf. *Id.* ¶ 49. The Trooper Defendants and the Bel Air police officers immediately arrested the Plaintiffs and at least eleven other protesters without announcing any grounds for their arrest.

*Id.* ¶¶ 50-52.  The Plaintiffs were handcuffed and detained alongside the public road for about half an hour.

Plaintiff Beeson, who was a minor at the time of the incident, was allegedly shoved to the ground by a Trooper.  *Id.* ¶ 55.  The Trooper tightly bound her hands with "twist ties" and refused Beeson's requests to loosen the ties, despite her complaints that they were causing her pain.  *Id.*  Plaintiff Ward was also allegedly handcuffed too tightly, causing her to develop numbness and swelling in her hands.  *Id.* ¶ 56.  Plaintiffs allege that State Trooper Sgt. Dona Bohlen, the attending State Police dispatcher and logistical supervisor, coordinated the mass arrest and arranged for the transport of the detained protesters to the local police station.  *Id.* ¶ 60.

After their arrest, the male Plaintiffs were transported in a van and the female Plaintiffs were transported in Bel Air police cruisers to the State Police barracks.  *Id.* ¶ 69.  The adult demonstrators were placed in cells, while the minor Plaintiffs, Beeson and Mooney, were confined in an office and handcuffed to a cabinet.  *Id.* ¶ 70.  Plaintiffs allege that Defendant Bohlen subjected female Plaintiffs Laura Beeson and Jessica Ward to sexually invasive searches at the barracks.  Bohlen allegedly searched under Beeson's brassiere and inside her shorts in front of Plaintiff Mooney.  *Id.* ¶ 71.  Bohlen also looked under Ward's shirt and stripped her of her bobby pins, hair tie, shoes, ring and the drawstring to her shorts.  *Id.* ¶ 72.

Minor Plaintiffs Beeson and Mooney were released from the State Police barracks at approximately 10:30 p.m.  *Id.* ¶ 75.  Meanwhile, the adult Plaintiffs were handcuffed and transported to the Harford County Detention Center in State Police cruisers.  *Id.*  At the County Detention Center, Plaintiff Jessica Ward was allegedly subjected to another invasive search when

Harford County employee Doris Presbury ordered Ward to lift her shirt and her brassiere. *Id.* ¶ 77.

After receiving additional mug shots and fingerprinting, the Plaintiffs met with the Harford County Commissioner. *Id.* ¶¶ 78-79. During the early morning hours of August 2, 2008, the Plaintiffs were finally released after receiving charges of disorderly conduct, failure to obey a lawful order, and loitering. *Id.* ¶ 79. On August 12, 2008, the State entered a *nolle prosequi* dismissing all charges as to all of the Plaintiffs. *Id.* ¶ 80.

In their First Amended Complaint, filed on July 23, 2009, Plaintiffs assert nine claims under 42 U.S.C. § 1983 for constitutional violations of their First, Fourth, Fifth, Ninth, and Fourteenth Amendment rights, as well as three common law claims for false arrest, false imprisonment, and malicious prosecution.[1] Some of the Defendants have moved separately to dismiss the Plaintiffs' action.[2] Among the motions pending before this Court are the Town of Bel Air and Officers Ravadge, Zulauf, and Dupre's Motion to Dismiss the First Amended Complaint or, Alternatively, for Summary Judgment (Paper No. 36), and the Maryland State Police ("MSP") Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Paper No. 46).

## STANDARD OF REVIEW

---

[1] The instant action is the second of two lawsuits that have arisen from the arrest and detainment of protestors from the August 1, 2008, anti-abortion demonstration. The companion case, filed on September 3, 2008 by fellow demonstrators Angela Swagler, Elizabeth Walsh, and Joan Walsh, includes many of the same defendants that are named in the instant case. On June 29, 2009, this Court issued a Corrected Memorandum Opinion and Order granting in part and denying in part several dispositive motions submitted by the defendants in the companion case. *See Swagler v. Harford County*, No. 08-2289, 2009 U.S. Dist. LEXIS 47895 (D. Md. June 2, 2009).

[2] No dispositive motion has been filed on behalf of Defendants Harford County, Harford County Sheriff L. Jesse Bane, and Harford County employee Doris Presbury.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). A complaint must meet the "simplified pleading standard" of Rule 8(a)(2), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Although Rule 8(a)(2) requires only a "short and plain statement," a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations contained in a complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Thus, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556).

Where, as here, Defendants seek to dismiss the Plaintiffs' civil rights complaint, this Court "must be especially solicitous of the wrongs alleged" and "must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*." *Edwards*, 178 F.3d at 244

(quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis in original); *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

## ANALYSIS

### I. Common Law Claims

Plaintiffs assert the state law torts of false arrest (Count IX), false imprisonment (Count X), and malicious prosecution (Count XI) against Trooper Defendants Bohlen, Bradley, Meades, Mohr, Neighoff, Nuzzo, and Rasinski. In moving to dismiss these claims, the State Trooper Defendants contend that they are entitled to immunity under the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101, *et seq.*, and that the Plaintiffs failed to allege facts that would support an inference that they acted with malice.

The MTCA serves as a limited waiver of sovereign immunity and it provides the sole means by which the State of Maryland and its personnel may be sued in tort. The statute grants immunity to state personnel "from liability in tort for a tortious act or omission that is within the scope of [their] public duties . . . and is made without malice or gross negligence . . . ." Md. Code Ann., Cts & Jud. Proc. § 5-522(b).[3]

Municipal officers similarly enjoy immunity from suit when they act "in a discretionary capacity, without malice, and within the scope of [their] employment or authority." Md. Code Ann., Cts & Jud. Proc. § 5-507(b)(1). This statute codified Maryland common law immunity as it pertains to public officials of Maryland counties, such as police officers. *Livesay v. Baltimore County*, 384 Md. 1, 12 (2004). It is well-established that "the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts." *Williams v. Prince George's County*, 112 Md. App. 526, 550 (1996).

---

[3] Plaintiffs do not allege that Defendants acted with gross negligence.

Under both state statutory immunity and public official immunity, the protection afforded is of a qualified nature—that is, defendants are shielded from liability as long as they act without malice. Under Maryland law, "malice" is defined by reference to "actual malice," as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Shoemaker v. Smith*, 353 Md. 143, 163 (1999) (quoting *Leese v. Baltimore County*, 64 Md. App. 442, 480 (1985)). Plaintiffs asserting malice are held to a high pleading standard that may not be satisfied by conclusory allegations. *See Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984) ("[m]erely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious); *Hovatter v. Widdowson*, No. CCB-03-2904, 2004 U.S. Dist. LEXIS 18646, at *23 (D. Md. Sept. 15, 2004) ("although the amended complaint repeatedly states that all of the defendants acted with malice towards [Plaintiff] . . . these bare legal conclusions are not binding on the court").

Plaintiffs' Amended Complaint contains a section highlighting allegations that purport to indicate malice. Am. Compl. ¶ 81. Trooper Bohlen is alleged to have made statements around the time of the arrest that exhibit a personal "disgust and contempt" for the protesters and reveal an improper motive for their arrest and detainment. *Id.* ¶¶ 61, 63. In addition, there are allegations that one or more of the arresting officers used excessive force in restraining Plaintiffs Beeson and Ward. *Id.* ¶¶ 55-56. On the basis of these individualized allegations, Plaintiffs could possibly prove facts showing that one or more of the Trooper Defendants acted with malice in arresting, detaining, and charging the Plaintiffs.

## II.   Constitutional Claims under Section 1983

Plaintiffs have set forth nine claims under 42 U.S.C. § 1983[4] for alleged violations of their First, Fourth, Fifth, Ninth, and Fourteenth Amendment rights. Counts I, II, III, IV, VI, VII, XII of the First Amended Complaint pertain to the events and circumstances of Defendants' arrest and detainment while Counts V and VIII relate to the strip searches allegedly conducted on some of the Plaintiffs. The Defendants' separate challenges to the constitutional claims are addressed in turn.

**A. Maryland State Police Defendants**

Former and current Maryland State Police Troopers Charles Neighoff, Christopher Bradley, Walter Rasinski, Mitchell Nuzzo, and Ernest Meads, and Sergeant Dona Bohlen ("Trooper Defendants") and Colonel Terrence Sheridan (collectively "MSP Defendants") move for dismissal and summary judgment on all claims.

    1) Claims Relating to Plaintiffs' Arrest and Detainment (Counts I, II, IV, VII, and XII)

Plaintiffs have properly stated claims against the Trooper Defendants in their individual capacities under § 1983 for their role in the Plaintiffs' arrest and detainment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"). Nonetheless, the Trooper Defendants contend that because they are entitled to qualified immunity and otherwise acted with probable cause, they should be granted summary judgment on these claims.

        i. Qualified Immunity

---

[4] Section 1983 states that "every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity." 42 U.S.C. § 1983.

The qualified immunity doctrine generally protects government officials when they perform the discretionary duties of their offices. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The affirmative defense of qualified immunity shields an officer from monetary damages as long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

When addressing the issue of qualified immunity, courts assess whether a constitutional right has been violated and whether the right "was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The United States Supreme Court recently held that reviewing judges may assess these two factors in any order they wish, in light of the unique facts of a case. *Pearson v. Callahan*, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009) ("[t]he judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

This Court finds that the qualified immunity issue cannot be resolved at the current time due to the fact-dependent nature of the required inquiry and the undeveloped status of the record. In addition, Plaintiffs have filed a Fed. R. Civ. P. 56(f) affidavit explaining their need to conduct discovery in order to properly counter the Defendants' motion for summary judgment. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (noting that reviewing courts "place great weight on the Rule 56 affidavit" when considering whether to defer a ruling on summary judgment); *see also Harrods v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("[g]enerally speaking, 'summary judgment [must] be refused

where the nonmoving party has not had the opportunity to discover information that is essential to his opposition'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

       ii.  Probable Cause

The separate but related issue of whether probable cause exists in a particular situation requires an inquiry into "two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). To succeed on the question of probable cause, defendants must make a greater showing than is required to establish the qualified immunity defense. *See Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) ("the standard for probable cause . . . is more stringent than is the requirement for qualified immunity").

The Trooper Defendants claim that they were alerted to the initial scene of the protest after they received various telephone complaints that the demonstrators were obstructing traffic. Such conduct, Defendants claim, is prohibited by Harford County Code, § 193-4(b)(1), which provides that it is unlawful for any person to "stand . . . in a public place in such a manner as to . . . [o]bstruct any public street, public highway, or public sidewalk . . . by hindering or impeding . . . the free and unimpeded passage of vehicles, traffic, or pedestrians." After being ordered by the troopers to discontinue their protest and leave the area, the Plaintiffs resumed their protest at a nearby intersection. Defendants note that under Maryland criminal law, "[a] person may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." Md. Code Ann., Crim. Law § 10-201(c)(3). The Trooper Defendants claim that the Plaintiffs' conduct in impeding traffic and in disobeying their lawful orders provided them with probable cause to make the arrests.

Plaintiffs, on the other hand, allege that they were lawfully assembled and protesting in a public forum and that they complied with local laws and did not impede traffic. Am. Compl. ¶¶ 38-39. They claim that the Defendants' reliance on the "loitering" provision of the Harford County Code is a *post hoc* and pretextual justification for their unconstitutional conduct. *Id.* ¶ 41. Plaintiffs maintain that their arrest was instead intended to censure the content of their protest, which Defendants saw as offensive and disruptive. *Id.* ¶¶ 40, 61.

At the current juncture, this Court faces two conflicting stories concerning what occurred at the time of the arrest on August 1, 2008. As mentioned in the qualified immunity analysis, Plaintiffs deserve an opportunity to engage in discovery before a full consideration of these claims is made at the summary judgment stage.

2) Policies Allegedly in Violation of the Fourteenth Amendment (Count III)

Plaintiffs allege that "Defendants' actions and policies . . . are unconstitutionally vague in that they fail to provide clear standards for regulating protected speech in the subject public forums, and fail to protect against arbitrary and discriminatory enforcement." Am. Compl. ¶ 105. Defendants counter that Plaintiffs have failed to state a claim for vagueness because they have not satisfactorily identified any allegedly improper "policies" or "actions" of the MSP Defendants.

The Amended Complaint alleges sufficient facts indicating that the Defendants, through their arrest and detainment of the demonstrators, executed a policy of censuring speech that was based, in part, upon an unconstitutionally vague ordinance. Accordingly, Plaintiffs have properly stated a claim in Count III.

3) Excessive Force Claim (Count VI)

In Count VI, Plaintiffs allege that some of the Trooper Defendants used excessive force when they restrained the demonstrators at the time of their arrest.[5] Plaintiff Beeson allegedly experienced pain and discomfort when she was forcibly restrained and Plaintiff Ward developed numbness and swelling in her hands after being placed in handcuffs. Am. Compl. ¶¶ 55-57.

A claim citing the use of excessive force during the course of an arrest is analyzed under the Fourth Amendment's "objective reasonableness standard." *Orem v. Rephann*, 523 F.3d 442, 445-46 (4th Cir. 2008). Under this standard, reviewing courts observe that while "not every push or shove, even if it may later seem unnecessary is serious enough to entail a deprivation of a constitutional right," a claim may succeed if the arresting officers' conduct is found to be "wanton, sadistic, and not a good faith effort to restore discipline." *Id.* at 447 (internal quotation marks omitted).

Defendants cite to Fourth Circuit case law holding that constitutional violations of excessive force cannot be sustained absent a showing that the alleged misconduct resulted in more than *de minimis* injury. *See* MSP Defs.' Mot. to Dismiss at 25 (citing *Taylor v. McDuffie*, 155 F.3d 479, 483-84 (4th Cir. 1998); *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc); *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc)). However the continued efficacy of these cases has been undermined by a recent Supreme Court case involving a claim of excessive force in the Eighth Amendment context. *See Wilkens v. Gaddy*, 130 S. Ct. 1175, 1179, 175 L. Ed. 2d 995, 2010 U.S. LEXIS 1036 (2010) (abrogating Fourth Circuit precedent establishing the *de minimis* injury requirement). Furthermore, even under the cases cited by Defendants, a claim could still lie if the officers' activities resulted "in an impermissible

---

[5] Plaintiffs' counsel informed Defendants that their Amended Complaint mistakenly cited the Fifth Amendment as the grounds for their excessive force claim. MSP Defs.' Mot. to Dismiss at 24, n.6. The parties acknowledge that the excessive force claim in Count VI is properly brought under the Fourth Amendment.

infliction of pain" or otherwise represented misconduct "of a sort repugnant to the conscience of mankind." *See Orem*, 523 F.3d at 448 (quoting *Norman*, 25 F.3d at 1263 n.4).

Plaintiffs have properly stated a claim for excessive force in Count VI of the Amended Complaint. They state that some of the arresting officers' actions were malicious and otherwise disproportionate under the circumstances and that Beeson and Ward experienced pain and discomfort. Accordingly, this Court defers resolution of the excessive force claim until the summary judgment stage.

    4) Claims Relating to the Strip Searches (Counts V and VIII)

The MSP Defendants claim that the searches conducted on the protesters incident to their arrest was reasonable and that Sgt. Bohlen is otherwise entitled to qualified immunity in regards to her searches.

Plaintiffs have properly stated claims for constitutional deprivations relating to the strip searches in Counts V and VIII. It is alleged that Plaintiffs Beeson and Ward were subjected to sexually invasive searches by Sgt. Bohlen at the State Police barracks. Am. Compl. ¶¶ 71-72, 81(J). This Court has observed that "the right of those arrested for offenses not likely to involve weapons or contraband to be free from strip searches without any individualized finding of reasonable suspicion appears to be clearly established." *Jones v. Murphy*, 470 F. Supp. 2d 537, 547 (D. Md. 2007). In addition, Sgt. Bohlen is alleged to have conducted the strip searches in a non-private setting. *See Amaechi v. West*, 237 F.3d 356, 364 (4th Cir. 2001) ("we have repeatedly emphasized the necessity of conducting a strip search in private"). Accordingly, there are no qualified immunity grounds that would bar the claims brought against Sgt. Bohlen at this stage of the proceedings. This issue may be raised again on summary judgment after the parties have been able to develop the factual record through discovery.

5) Official-Capacity Claims against Defendant Sheridan

Colonel Sheridan, the Superintendent of the Maryland State Police, has been sued in his official capacity for the claims relating to the Plaintiffs' arrest and detainment and the sexually invasive searches.

The claims brought against Defendant Sheridan are construed as seeking prospective injunctive relief to prevent ongoing violations of federal law. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("implementation of state policy or custom may be reached in federal court [] because official-capacity actions for prospective relief are not treated as actions against the State"). To sustain its official-capacity actions, Plaintiffs must establish that Sheridan, as the final policy-making authority for the Maryland State Police,[6] oversaw a State Police policy that played a role in the alleged constitutional deprivations. *Graham*, 473 U.S. at 166.

Plaintiffs alleged that Defendant Sheridan operated a policy "of categorizing and surveilling pro-life advocates, including plaintiffs, as potential 'terrorists,' suppressing pro-life speech deemed offensive to members of the public" and that this policy was a moving force behind the violation of Plaintiffs' rights. Am. Compl. ¶¶ 90, 92. In addition, it is alleged that Defendant Sheridan failed to adequately train, supervise, or discipline the Trooper Defendants on the issue of First Amendment rights. *Id.* ¶ 91. Finally, it is alleged that Bohlen's sexually invasive searches of Plaintiffs Beeson and Ward were conducted "in accordance with a policy, custom or practice of the State Police, authorized or ratified by defendant Sheridan, of conducting invasive searches of non-violent female arrestees who pose no danger to the arresting officer or themselves," or, alternatively, "was the result of defendant Sheridan's failure to provide adequate training or supervision to prevent such unreasonable searches." *Id.* ¶¶ 111-12.

---

[6] This Court determined, in the companion case to this action, that Colonel Sheridan is the final policy maker for the Maryland State Police. *See Swagler v. Harford County*, No. 08-2289, 2009 U.S. Dist. LEXIS 47895, at *29-30 (D. Md. June 2, 2009).

The allegations supporting Plaintiffs' official capacity claims against Defendant Sheridan are non-conclusory and provide "fair notice of what [the] claims are and the grounds upon which they rest." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**B. The Bel Air Defendants**

In their Amended Complaint, Plaintiffs have named as Defendants, the Town of Bel Air, Officer Donald Ravadge, Officer Mark Zulauf, and Deputy Chief Armand Dupre ("the Bel Air Defendants"). The Bel Air police officers are alleged to have participated in Plaintiffs' unlawful arrest and handcuffing and to have transported some of the arrestees to the State Police barracks.[7] Am. Compl. ¶¶ 49-51, 69. The Bel Air officers contend that they did not play any active role, or otherwise engage in any unconstitutional behavior during the arrest, search, and transportation of the Plaintiffs. Alternatively, they claim that even if their participation is deemed significant, they are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In support of their claim, the Bel Air officers have submitted affidavits in which they represent that their role in the arrests was insubstantial and constitutionally valid. *See* Exs. 1-3 to Bel Air Defs.' Mot. to Dismiss and/or for Summ. J. They argue that they are entitled to summary judgment on the basis of these submissions, because the Plaintiffs have failed to offer any countervailing affidavits that create any genuine issue for trial. However, this Court finds, on the basis that of the parties' representations and submissions, that the nature and extent of the Bel Air officers' participation in the arrest and whether they are entitled to qualified immunity present contentious and fact-dependent issues. Plaintiffs have fulfilled the minimal requirements

---

[7] While caption of the Amended Complaint indicates that the Bel Air officers are named only in their individual capacities, paragraphs 24 through 26 state that the officers are being sued in their official and individual capacities. In order to hold the Bel Air officers liable in their official capacities, it must be shown that they had final policy making authority for the Town of Bel Air. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988). Because Plaintiffs have included no such allegations, their Amended Complaint is construed as only alleging claims against the Bel Air officers in their individual capacities.

of Fed. R. Civ. P. 56(e) by submitting the unsworn declaration of Jack Ames expressly made under penalty of perjury that disputes the facts presented by the Bel Air Defendants regarding their role in the arrests. *See* Ex. 4 to Pls.' Opp. ¶¶ 26-28. Finally, as mentioned above, Plaintiffs' counsel has submitted a Fed. R. Civ. P. 56(f) affidavit justifying their need to develop to the record through discovery in order to effectively oppose Defendants' motions. *See, e.g.*, *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 961 (4th Cir. 1996); *Harrods v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Thus, the issues presented by the Bel Air Defendants' motions are more properly resolved after the completion of discovery.

In addition, Plaintiffs seek to hold the Town of Bel Air liable under a theory of municipal liability. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Towards this end, Plaintiffs must show that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." [8] *Id.* at 694.

Plaintiffs have alleged that the Bel Air police officers' unconstitutional activities were done at the behest of Bel Air's "policy, custom, and practice . . . of suppressing speech deemed offensive to members of the public . . . ." Am. Compl. ¶ 95. In addition, the police officers' conduct is alleged to have resulted from Bel Air's failure to properly train its officers on the need to protect Plaintiffs' First Amendment rights. *Id.* ¶ 96. Plaintiffs' allegations, while not voluminous, are sufficient for purposes of surviving motion to dismiss; Plaintiffs' could possibly establish facts supporting a claim of municipal liability against the Town of Bel Air. *See Jordan by Jordan v. Jackson*, 15 F.3d 333, 340 (4th Cir. 1994) (holding that to survive motion to

---

[8] This Court has granted the Defendant Town of Bel Air's request for a bifurcation of discovery and trial pursuant to Federal Rule of Civil Procedure 42(b) and *Dawson v. Prince George's County*, 896 F. Supp. 537 (D. Md. 1995) and *Marryshow v. Town of Bladensburg,* 139 F.R.D. 318 (D. Md. 1991). *See* Paper No. 45. As a result, proceedings against the Town of Bel Air have been stayed pending the resolution of the claims brought against the Bel Air police officers.

dismiss, a *Monell* claim need only provide the municipality with "notice of the nature of the claim against them and the grounds on which it rests").

## CONCLUSION

For the reasons stated above, the Town of Bel Air and Officers Ravadge, Zulauf, and Dupre's Motion to Dismiss the First Amended Complaint or, Alternatively, for Summary Judgment (Paper No. 36) and the Maryland State Police ("MSP") Defendants' Motion to Dismiss the First Amended Complaint or, in the Alternative, Motion for Summary Judgment (Paper No. 46) are both DENIED. A separate Order follows.

Date: May 4, 2010

/s/_____
Richard D. Bennett
United States District Judge